UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
COREY FRANZINI, on behalf of Plaintiff and a class,

                            Plaintiff,

    v.

BISSELL HOMECARE, INC.,

                           Defendant.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**

2:23-cv-02985(JMA)(LGD)

**LEE G. DUNST**, Magistrate Judge:

Plaintiff Corey Franzini ("Plaintiff") commenced this suit on behalf of himself and those similarly situated, asserting federal claims against Defendant Bissell Homecare, Inc. ("Defendant") under the Magnuson Moss Warranty Act, 15 U.S.C. § 2302 *et seq.* ("MMWA"), and New York state law claims under General Business Law ("NYGBL") § 349. *See* Electronic Case File Number ("ECF No.") 14. Presently before the Court is Defendant's motion to dismiss all claims (the "Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 21. On April 16, 2024, District Judge Joan M. Azrack referred the Motion to the undersigned for a Report and Recommendation. Apr. 16, 2024 Order. For the following reasons, the undersigned recommends that all claims be dismissed with prejudice but not entirely for the reasons argued by Defendant in the Motion.

**I.    FACTUAL BACKGROUND[1]**

In January of 2023, Defendant Bissell Homecare, Inc. sold a Bissell CrossWave 1785 series floor cleaner (the "Device") to Plaintiff. ECF No. 14 ¶ 9. The Device was accompanied

---

[1] The relevant alleged facts set forth herein are taken from the First Amended Complaint (ECF No. 14) and are accepted as true for purposes of ruling on the Motion. *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019) ("The court accepts as true all well-pleaded factual allegations in the complaint, [and] draws all reasonable inferences in favor of the nonmoving party.") (internal quotations omitted).

by a user guide which contained a warranty. *Id.* ¶ 10, Ex. A. The warranty states that "[d]amage or malfunction caused by . . . any other use not in accordance with the user guide is not covered." *Id.* ¶ 11. The remainder of the user guide defines "use not in accordance with the user guide" to include any use of non-Bissell cleaning products. *Id.* ¶ 12. Specifically, the user guide states:

   a. Use only BISSELL cleaning formulas intended for use with this appliance to prevent internal component damage.

   b. WARNING   To reduce the risk of fire and electric shock due to internal component damage, use only BISSELL cleaning formulas intended for use with the hard floor device.

   c. Always use CrossWave, formulas in your machine. Other formulas may harm the machine and void the warranty.

*Id.* Notably, the entire user guide is not available to customers prior to purchase of the Device and customers can only see the aforementioned warranty page. *Id.* ¶ 13.

In February of 2023, Plaintiff alleged that he purchased Bissell replacement fluid for the Device instead of cheaper non-Bissell fluid, claiming that he did so to avoid potential difficulties in obtaining future warranty service. *Id.* ¶ 14. Plaintiff represents that he would prefer to use less expensive non-Bissell replacement fluid and would do so but for Defendant's statements in the user guide purporting to potentially void the warranty as a result. *Id.* Plaintiff alleges that non-Bissell replacement fluids would not damage the Device (*id.* ¶ 18) and are in fact cheaper (*id.* ¶ 19).

**II.     PROCEDURAL BACGROUND**

On April 20, 2023, Plaintiff filed his initial complaint against Defendant in this action. ECF No. 1. In response, on May 22, 2023, Defendant filed a pre-motion letter to dismiss the complaint. ECF No. 11. Subsequently, Plaintiff amended the initial complaint (ECF No. 14), which is now the operative pleading as Plaintiff's First Amended Complaint ("FAC"). On June

2, 2023, Defendant filed a pre-motion letter to dismiss the FAC.  ECF No. 16.  On June 9, 2023, Plaintiff filed its response in opposition.  ECF No. 17.  On August 1, 2023, Judge Azrack held a pre-motion conference and ordered the parties to submit a proposed briefing schedule.  ECF No. 18.  Consequently, on August 2, 2023, the parties filed that joint proposed schedule (ECF No. 19), which was granted that same day.  Aug. 2, 2023 Order.  On October 2, 2023, Defendant filed the fully briefed Motion, including a memorandum in support, Plaintiff's memorandum in opposition, and Defendant's reply memorandum.  ECF No. 21.  Judge Azrack subsequently referred the Motion to the undersigned for a Report and Recommendation.  Apr. 16, 2024 Order.

The undersigned later directed submission of supplemental letters to address a subject matter jurisdiction question that was not previously noted by the parties.  *See* Jun. 6, 2024 Order ("The parties shall submit supplemental letters (limited to 5 pages with no exhibits) on the issue of whether the Class Action Fairness Act ('CAFA') provides an alternative basis for federal jurisdiction over Magnuson-Moss Warranty Act ('MMWA') claims, or whether the MMWA's more stringent federal jurisdictional requirements must always be met.").  Subsequently, the parties submitted their supplemental letters on June 18 and June 19.  *See* ECF No. 27; ECF No. 28.[2]

## III.   LEGAL STANDARDS

### A.   Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a complaint for lack of subject matter jurisdiction.  Additionally, the Court has "an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*." *Jackson v. New York State Off. of Mental Health - Pilgrim Psychiatric Ctr.*, No. 23CV04164,

---

[2] "The parties timely filed responses, with both responses agreeing that this Court has CAFA jurisdiction. (Dkt. Nos. 27, 28)"  ECF No. 29 (parties' joint status report).

2024 WL 1908533, at *3 (E.D.N.Y. May 1, 2024) (italics in original); *Hunter v. McMahon*, 75 F.4th 62, 66 (2d Cir. 2023) (same); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Dismissal of a claim for lack of subject matter jurisdiction "is proper when the district court lacks the statutory or constitutional power to adjudicate it." *Brokamp v. James*, 66 F.4th 374, 386 (2d Cir. 2023); *see also Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam) (same). In deciding whether subject matter jurisdiction exists, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Kuai Le Chen v. Nielsen*, 365 F. Supp. 3d 292, 294 (E.D.N.Y. 2019) (quoting *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)). Finally, the parties cannot jointly waive a fatal defect in subject matter jurisdiction. *See Doe v. United States*, 833 F.3d 192, 196 (2d Cir. 2016) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant."); *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012) (same).

**IV.    DISCUSSION**

Plaintiff asserts federal claims under MMWA and state claims under NYGBL. For the reasons set forth herein, the Court recommends that the claims be dismissed with prejudice.

**A.    MMWA Claims**

i.    CAFA Jurisdiction and the MMWA

Plaintiff purports to bring claims under the MMWA through the Class Action Fairness Act of 2005, ("CAFA"), Pub.L. No. 109–2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.). *See* ECF No. 14 ¶¶ 2, 32 ("The Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d) ("CAFA") and 28 U.S.C. §1367. . . CAFA provides a

basis for federal jurisdiction over Magnuson Moss Act claims."). Under CAFA, federal district courts have original *diversity jurisdiction* over any controversy where:

> the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—
>
> > (A) any member of a class of plaintiffs is a citizen of a State different from any defendant;
> >
> > (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or
> >
> > (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

28 U.S.C. § 1332(d).

The MMWA, however, has an independent basis for vesting jurisdiction that "creates *federal question jurisdiction* over certain warranty claims." *Ghaznavi v. De Longhi Am., Inc.*, No. 22 CIV. 1871, 2023 WL 4931610, at *7 (S.D.N.Y. Aug. 2, 2023) (Failla, J.) (emphasis added). It provides:

> (1) [A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief — (A) in any court of competent jurisdiction in any State or the District of Columbia; or (B) in an appropriate district court of the United States, *subject to paragraph (3) of this subsection*.

15 U.S.C. § 2310(d)(1) (emphasis added). The statute then limits that grant of federal question jurisdiction in paragraph (3), stating:

> (3) No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection — (A) if the amount in controversy of any individual claim is less than the sum or value of $25; (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

15 U.S.C. § 2310(d)(3).

5

"Reading those two provisions in tandem, the MMWA imposes three requirements for suits originating in federal district court: (i) a minimum individual amount in controversy of $25; (ii) a minimum aggregate amount in controversy of $50,000; and (iii) *a numerosity requirement of at least one hundred named plaintiffs*." *Ghaznavi*, 2023 WL 4931610, at *7 (citation omitted) (emphasis added); *see also* Herbert B. Newberg & William B. Rubenstein, Newberg & Rubenstein on Class Actions § 21:7 (6th ed. 2023) (emphasizing that for federal jurisdiction under the MMWA, "there must be at least 100 *named plaintiffs*, not just 100 class members," and noting that this requirement "is unique to the MMWA and peculiar.") (emphasis in original).

Thus, there is a critical inconsistency between the MMWA and CAFA. The MMWA vests federal question jurisdiction *only* where there are 100 named plaintiffs with a total amount in controversy of $50,000, aggregated among named plaintiffs. This jurisdictional requirement conflicts with CAFA, which vests diversity jurisdiction where, in the aggregate, *class claims* reach its independent amount in controversy requirement of $5,000,000.[3] Here, for instance, Plaintiff does *not* assert federal question jurisdiction under the MMWA, as there are no allegations of an additional ninety-nine named plaintiffs with claims totaling $50,000. Instead, Plaintiff claims diversity jurisdiction through CAFA. *See* ECF No. 14 ¶ 2 ("The Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d) ("CAFA")). Plaintiff then alleges, in purported fulfillment of CAFA, that "[t]here are more than 100 members of each class. . . [and] [t]he amount in controversy, on a classwide basis, is in excess of $5 million, exclusive of interest and costs." ECF No. 14 ¶¶ 3,5. Plaintiff also alleges minimal

---

[3] The important distinction here is that under CAFA *class claims* can be aggregated to reach the amount in controversy requirement, but under the MMWA only the claims of other *named plaintiffs* can be aggregated. *See Ware* v. *Best Buy Stores, L.P.*, 6 F.4th 726, 731-32 (7th Cir. 2021) (determining MMWA's $50,000 threshold was not met when the only named plaintiffs' claims did not exceed $5,000); *Ghaznavi*, 2023 WL 4931610, at *7 n.3.

6

diversity, as he is a New York citizen (*id*. ¶ 6), and Defendant is incorporated and has its principal place of business in Michigan (*id*. ¶ 7)). Thus, "because the pleading satisfies CAFA's jurisdiction requirements but not the MMWA's, the relevant question is instead a legal one: whether CAFA provides an alternative basis for federal jurisdiction over MMWA claims, or whether the MMWA's more stringent federal jurisdictional requirements must always be met." *Ghaznavi*, 2023 WL 4931610, at *7.

There is a sharp disagreement among the courts that have addressed this question, which this Court must decide despite the parties' own agreement.[4] *See* ECF Nos. 27 & 28. Some courts hold that "CAFA provides an alternative basis for jurisdiction without regard for the MMWA." *Dayan v. Swiss-Am. Prod., Inc.*, No. 15CIV6895, 2017 WL 9485702, at *9 (E.D.N.Y. Jan. 3, 2017), *report and recommendation adopted,* No. 15CV6895, 2017 WL 1214485 (E.D.N.Y. Mar. 31, 2017); *see also Kuns v. Ford Motor Co.*, 543 Fed. Appx. 572, 574-75 (6th Cir. 2013) (finding that courts have subject-matter jurisdiction under CAFA even when the plaintiffs cannot not satisfy MMWA requirements). Other courts, however, reject that approach and instead find that the MMWA's separate jurisdictional requirements must be satisfied in order to assert MMWA claims in federal court. *See, e.g.*, *Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 183 (3d Cir. 2023) ("As a result, CAFA does not provide a basis for federal jurisdiction over MMWA class actions that do not satisfy the MMWA's jurisdictional requirements."); *Floyd* v. *Am. Honda Motor Co., Inc.*, 966 F.3d 1027, 1032-35 (9th Cir. 2020) (similar); *Ghaznavi*, 2023 WL 4931610, at *7 ("the Court finds that CAFA does not provide a workaround to the MMWA's federal jurisdictional requirements.").

---

[4] As stated *supra*, although the parties agree that the Court has subject matter jurisdiction (*see* ECF Nos. 27 & 28), "no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant." *Doe*, 833 F.3d at 196; *see Shinnecock Indian Nation*, 686 F.3d at 138 (same).

      ii.      <u>Analysis</u>

As discussed herein, the undersigned rejects the arguments by both parties and agrees with the persuasive decisions finding that CAFA does not provide a workaround to the MMWA. The undersigned therefore recommends the Court dismiss those claims for lack of subject matter jurisdiction.

The sole non-binding authority in this District addressed this issue in 2017 and held that "CAFA provides an alternative basis for jurisdiction." *Dayan*, 2017 WL 9485702 at * 10. Primarily, the *Dayan* court found that CAFA's broad language granted federal diversity jurisdiction over any kind of class action. *Id.* ("class action is expansively defined as any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action. On its face, then, the plain text of CAFA seems to authorize suits like the one here.") (internal quotations and citations omitted). Moreover, according to *Dayan*, CAFA, which was passed 30 years after the MMWA, does not "carve out the MMWA, nor does it contain language (as the supplemental jurisdiction statute does, *see* 28 U.S.C. § 1367) to the effect that it applies 'except . . . as provided otherwise by Federal statute.'" *Id.* (quoting 28 U.S.C. § 1367). In fact, there are other statutes, "namely sections of the Securities Act of 1933 and the Securities Exchange Act of 1934," where CAFA does carve out exceptions. *Id.*; *see also* 28 U.S.C. § 1332(d)(9)(A). "Accordingly, and given the plain language of CAFA, there is no basis to read an MMWA exception into CAFA that Congress itself chose not to include." *Id.*; *see, e.g.*, *Weisblum* v. *Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 293-94 (S.D.N.Y. 2015) (same) (quoting 28 U.S.C. § 1332(d)(2)); *Chavis* v. *Fid. Warranty Servs., Inc.*, 415 F. Supp. 2d 620, 626-28 (D.S.C. 2006) (similar).

However, since *Dayan*, "[t]he trend has shifted away from this view . . ."[5]  *Ghaznavi*, 2023 WL 4931610, at *8 (citing *Floyd*, 966 F.3d at 1027; *Rowland*, 73 F.4th at 183).  More recent decisions have concluded that the MMWA's stringent language that "*[n]o claim shall be cognizable* in a suit brought under paragraph (1)(B) of this subsection," unless its jurisdictional requirements are satisfied, controls.  15 U.S.C. § 2310(d)(3) (emphasis added); *Ghaznavi*, 2023 WL 4931610, at *8 (citing *Rowland*, 2023 WL 4419370, at *3)); *see also Ebin* v. *Kangadis Food Inc.*, No. 13 Civ. 2311, 2013 WL 3936193, at *2 (S.D.N.Y. July 26, 2013)) (similar).  The MMWA's plain language divests federal courts of jurisdiction in no uncertain terms.  It also provides a more direct textual basis than the approach in *Dayan*, which relies on the interpretative canon *unius est exclusio alterius* (mention of one impliedly excludes others) to support the *inference* that "Congress itself *chose* not to include" an exception within CAFA for MMWA claims.  *Dayan*, 2017 WL 9485702 at * 10 (emphasis added) (citing *Doe v. Bin Laden*, 663 F.3d 64, 70 (2d Cir. 2011).  Such an approach, however, nullifies the clear meaning of the MMWA's specific jurisdictional language by giving greater effect to the generalized wording of CAFA.  *See Rowland*, 2023 WL 4419370, at *5 (quoting *J.E.M. Ag Supply, Inc.* v. *Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 143-44 (2001) (citing the "basic principle" that "a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum.") (internal quotations omitted).

---

[5] In response to this point, Defendant cites *Ostenfeld v. Laundress, LLC*, No. 22-CV-10667, 2024 WL 967124, at *9 (S.D.N.Y. Mar. 5, 2024), which found CAFA jurisdiction over MMWA claims in a similar case.  The *Ostenfeld* court's analysis on this issue, however, is limited to two short paragraphs and largely rests on that same judge's previous 2015 holding.  *See Weisblum*, 88 F. Supp. 3d 283 at 294.  Instead of overruling himself, that judge elected to maintain course, stating that "if the law on the relationship between CAFA and the MMWA develops further — most notably, if the Supreme Court or Second Circuit weigh in — the Court is prepared to revisit the issue. But for now, the Court adheres to the view that it has subject-matter jurisdiction over the Class Plaintiffs' MMWA claim." *Id.*  Finally, the judge in *Ostenfeld* noted that "[t]here are compelling arguments in support of [the] contrary view, thoroughly and ably marshaled by Judge Failla in *Ghaznavi*." *Ostenfeld*, 2024 WL 967124, at *9.  Nothing in the *Ostenfeld* analysis, however, persuades the undersigned not to follow Judge Failla's detailed approach as set forth in *Ghaznavi*.

The unambiguous text in the MMWA should control over an interpretive canon read into CAFA nullifying that language. "Absent constitutional deficiencies, the power to amend or repeal federal statutes belongs exclusively to Congress. Because CAFA does not evince a clear intent by Congress to supplant the MMWA's jurisdictional requirements, the Court will not permit Plaintiff to evade them." *Ghaznavi*, 2023 WL 4931610, at *8 (citing *Hawaii* v. *Off. of Haw. Affs.*, 556 U.S. 163, 175 (2009) (requiring "clear and manifest intent" congressional intent for implied repeal (internal quotations omitted)); *see also* Sarah Denis, *Using the Class Action Fairness Act As a Loophole Around the Magnuson Moss's Jurisdictional Requirements*, 19 J. CONSUMER & COM. L. 124, 128 (2016) ("[C]ourts should not allow CAFA to create a loophole on what Congress expressly set out in 1975.").

Finally, the tension between the two statutes exists because they are "directed at different subjects." *Ghaznavi*, 2023 WL 4931610, at *9. Whereas CAFA is meant to grant *diversity* jurisdiction over *state law claims* through 28 U.S.C. § 1332, the MMWA's jurisdictional grant is one of *federal question* jurisdiction through 28 U.S.C. § 1331. *Id.* Thus, "[n]othing in CAFA's text indicates congressional intent to modify the requirements for class actions raising *federal* claims. CAFA's failure to address the MMWA is sensical in this context." *Id.* (citation omitted) (emphasis in original). In other words, the MMWA is not explicitly cited as an exception in CAFA because the MMWA's grant of jurisdiction is *solely* through Section 1331 – it is by its own terms outside any grant of jurisdiction CAFA could even provide.

Thus, for the foregoing reasons, the undersigned finds that the Court does not have jurisdiction over Plaintiff's MMWA claims through CAFA. The undersigned recommends that the MMWA claims be dismissed because this Court lacks the statutory authority to hear them. If Plaintiff still wants to bring these MMWA claims, he must bring them in state court instead. *Id*.

10

("Nothing in this Opinion prevents Plaintiff from refiling this suit in state court, unrestrained by the MMWA's limits on federal jurisdiction.").

### B. NYGBL Claims

Having recommended dismissal of the MMWA claims, the undersigned now turns to the remaining state law claims under the NYGBL. *See* ECF No. 14 ¶¶ 42-52. Plaintiff contends that even if the Court does not have jurisdiction over MMWA claims, it has CAFA jurisdiction over the NYGBL claims, and thus could exercise supplemental jurisdiction over MMWA claims by way of 28 U.S.C. § 1367(a). *See* ECF No. 28 at 1 ("It is thus not necessary to resolve the issue of whether CAFA trumps the MMWA because supplemental jurisdiction applies to the MMWA claim."). The jurisdictional gymnastics suggested by Plaintiff run counter to the typical situation, where original jurisdiction exists over federal claims, and supplemental jurisdiction then applies to any state law claims. *See Garofalo v. City of New York*, No. 122CV07620, 2023 WL 3792514, at *4 (E.D.N.Y. June 2, 2023) ("District courts have supplemental jurisdiction over *state law claims* 'that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'") (quoting 28 U.S.C. § 1367(a) (emphasis added)); *see also F5 Capital v. Pappas*, 856 F.3d 61, 77 (2d Cir. 2017) (similar).

The undersigned is highly skeptical of this second jurisdictional backdoor offered by Plaintiff to preserve his MMWA claims in federal court, but this question need not be decided due to other fatal defects with Plaintiff's claim.[6] Specifically, the undersigned finds for the reasons stated below that Plaintiff does not have standing under the NYGBL, and thus these claims must be dismissed. Without the NYGBL claims, the Court cannot exercise supplemental

---

[6] The undersigned notes here that Plaintiff supports his jurisdictional proposition with older caselaw that is mainly outside this Circuit and is not convincing or binding. *See* ECF No. 28 at 1.

jurisdiction over the MMWA claims (as suggested by Plaintiff), and thus they must be dismissed for lack of jurisdiction for the reasons stated above.

      i.      <u>Standing</u>

To establish standing under Article III of the Constitution, a plaintiff, at a minimum, must allege three things: "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Kraus v. Snow Teeth Whitening LLC*, No. 20-CV-6085, 2022 WL 4642170, at *3 (E.D.N.Y. Sept. 15, 2022), *report and recommendation adopted*, No. 20-CV-6085, 2022 WL 4662819 (E.D.N.Y. Sept. 30, 2022) (quoting *Akridge v. Whole Foods Mkt. Grp., Inc.*, 20-CV-10900, 2022 WL 955945 at *4 (S.D.N.Y. Mar. 30, 2022)). "If 'the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)).

Moreover, "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Friedman v. Cavalry Portfolio Servs., LLC*, 675 F. Supp. 3d 300, 303 (E.D.N.Y. 2023) (citing *TransUnion*, 594 U.S. 413 at 425) (emphasis in original). An injury to the plaintiff qualifies as "concrete" where it bears "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts," such as "physical and monetary harms, along with other traditional tangible harms, [as well as] certain intangible harms, such as reputational harm." *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 63, n.2 (2d Cir. 2021) (quoting *TransUnion*, 594 U.S. 413 at 425). "No concrete harm, no standing," and thus no federal court

jurisdiction. *Friedman*, 675 F. Supp. 3d 300 at 303 (E.D.N.Y. 2023) (citing *TransUnion*, 594 U.S. 413 at 423).

        ii.        <u>Analysis</u>

The undersigned finds that Plaintiff fails to plead the kind of concrete, particularized injury cognizable by Article III. As argued by Defendant, "Plaintiff has not alleged any of the following: (1) that he used an off-brand cleaning solution, (2) that he attempted to enforce the Warranty, or (3) that he was denied coverage." ECF No. 21 at 14. Essentially, Plaintiff's contention is that he may experience harm by voiding his warranty by using non-Bissell cleaning solution at some hypothetical future date, and that apprehension has caused Plaintiff to "pay[] a higher price for cleaning solution" – a so-called "price premium." ECF No. 21-4 at 14. This possible future injury, however, is not a sufficient harm to meet the standing requirements under Article III. *See Ghaznavi*, 2023 WL 4931610, at *5 ("For one, the Coffee Maker still retains its full value because the Warranty is currently operative — Plaintiff has not voided it by attempting to repair it himself or by taking it to an unauthorized repair shop. And Plaintiff has not yet incurred any expense in complying with the Warranty; he has not, for instance, shipped the Coffee Maker to the De'Longhi facility for repair and so has not paid for shipping, insurance, or other incidentals that would certainly be cognizable economic injuries.") (citing *Konkel v. Brother Int'l Corp.*, No. CV2200479, 2023 WL 3585354, at *1 (D.N.J. May 22, 2023) (emphasizing, in finding a lack of standing, that the consumer-plaintiffs stated only a vague intent to repair their own printers in the future but did not actually endeavor to do so)).

Furthermore, Plaintiff does not plausibly allege that he paid a price premium for Bissell replacement fluids. Plaintiff's sole allegations on this point are two conclusory paragraphs claiming that Plaintiff would have preferred to purchase "cheaper non-Bissell replacement

13

fluids" instead of Bissell replacements. ECF No. 14 ¶¶ 14-15. Plaintiff, however, does not state how much he paid for Bissell fluids, nor does he allege what the price difference between Bissell fluids and competitors are. Instead, Plaintiff attaches several exhibits to the FAC with search results from Amazon.com purporting to show the price of competitor replacement fluids. *See id.*, Exs. F, G, H. As Defendant correctly argues, though, these exhibits alone cannot demonstrate that Plaintiff actually paid any sort of price premium. *See* ECF No. 21 at 11-13 ("While Plaintiff conclusorily [*sic*] alleges that BISSELL cleaning solution is 'more expensive' than these options, he did not attach pricing for BISSELL's solution, and he does not allege what he paid for the solution."). These bare allegations provide no factual support that the Court could accept as true. *See Iqbal*, 556 U.S. at 664 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, the only injury Plaintiff even potentially alleges under the NYGBL is "possessing a possibly unlawful warranty, an injury that plainly falls within the category of bare procedural violations that alone are insufficient to confer standing." *Ghaznavi*, 2023 WL 4931610, at *5; *see also Belcastro v. Burberry Ltd.*, No. 16-CV-1080, 2017 WL 5991782, at *3 (S.D.N.Y. Dec. 1, 2017) ("New York law does not recognize an injury based on the subjective value assigned to a missing bargain because it merges deception and injury."); *Irvine v. Kate Spade and Co.*, No. 16-CV-7300, 2017 WL 4326538, at *3 (S.D.N.Y. Sept. 28, 2017) ("New York law does not recognize an injury based on deception itself—the fact that Plaintiff was deceived is not, standing alone, an actual injury."). Therefore, the NYGBL claims should be dismissed for lack of standing.

### C.  Leave to Amend

Finally, the undersigned recommends that the FAC be dismissed without leave to renew. Although courts should freely give leave to amend "when justice so requires," under Federal Rules of Civil Procedure 15(a)(2), leave should be denied when amendment would be futile. *See Berlin v. JetBlue Airways Corp.*, 436 F. Supp. 3d 550, 571 (E.D.N.Y. 2019). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *In re Trib. Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 175 (2d Cir. 2021) (internal quotations and citation omitted).

The undersigned recommends that Plaintiff be denied leave to amend because any amendment would be futile. As stated above, because the Court does not have original jurisdiction over the NYGBL claims, it cannot exercise supplemental jurisdiction over the MMWA claims (accepting, for now, Plaintiff's questionable jurisdictional argument). And, because the Court does not have original federal jurisdiction over the MMWA claims through CAFA, it cannot hear those either. Finally, here, as in *Ghaznavi*, "[t]he Court has no reason to believe that Plaintiff could meet the MMWA's jurisdictional requirements; Plaintiff has not indicated that ninety-nine additional named Plaintiffs are waiting to join his suit." *Ghaznavi*, 2023 WL 4931610, at *10. Thus, because "amendment would not cure the pleading deficiencies that led the Court to dismiss this suit in the first instance," the undersigned recommends that the FAC be dismissed with prejudice. *Id.*

### V.  CONCLUSION

For the foregoing reasons, the undersigned finds that Plaintiff does not have standing to assert claims under the NYGBL. As a result of the Court not having original jurisdiction through

15

CAFA over the NYGBL claims, it cannot in turn exercise supplemental jurisdiction over the MMWA claims.  And, because the undersigned finds that the Court does not have direct CAFA jurisdiction over the MMWA claims, this Court does not have jurisdiction to hear *any* of Plaintiff's remaining federal claims.  The undersigned also finds that amendment would be futile.  Thus, the undersigned recommends the Court dismiss all claims with prejudice.  If Plaintiff wishes to pursue the remaining MMWA claims, the proper venue is a state court.

## VI. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to Judge Azrack.  FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS.  *See Thomas v. Arn*, 474 U.S. 140, 154-55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995).

**SO ORDERED**:

Dated: Central Islip, New York
July 10, 2024

<u>  s/ Lee G. Dunst  </u>
**LEE G. DUNST**
United States Magistrate Judge